Hugh S. Coyle, J.
The plaintiff landowner brings this action in equity to enjoin and restrain defendants, sued individually, and as the Board of Education of Union Free School District No. 5 of the Village of Ardsley, from casting and diverting surface drainage waters from defendant’s school property into a pond located to the north of land of the plaintiff, and in which pond or lake the plaintiff has certain easement rights. Alternative relief for money damages in the sum of $25,000 is claimed by the plaintiff. It has been stipulated by the attorneys for the respective parties that the action is to be determined upon the question of damages resulting from the casting of surface waters only upon plaintiff’s premises.
The action was tried by the court without a jury and the facts show that plaintiff acquired title to his property in September of *340 1952. By the deed of conveyance he was granted easements in, and to, a pond covering about one acre of land located as aforesaid to the north of plaintiff’s land. Said pond has a depth of from 1 to 10 feet, is oval in shape and extends for approximately 160 feet along plaintiff’s land and is separated from plaintiff’s land by a dam or dike on one face of the pond. The easement rights as contained in plaintiff’s deed are as follows: ‘ ‘ The above described premises are conveyed subject to the fact that the above premises border on or touch upon a pond, and it is agreed between the grantors and grantees that all owners of land bordering upon or touching upon the pond shall have a common casement to the said pond area and that no person owning land which abuts the said pond shall change the contours or depth of the said pond without the written consent of all owners of other lands abutting the said pond ”.
It should be observed that the land of the defendant does not physically abut the pond, and the waters draining from defendant’s property cross under a roadway through and under lands of others into the pond. At the end of the pond nearest plaintiff’s property, the dam or dike hereinbefore referred to consists of a rubble wall, approximately 3 feet wide, and about 9 to 10 feet hi depth extending along plaintiff’s property in front of which there exists an outlet stream or channel and both the dam and the stream or channel designed to receive the overflow from the pond have been in existence for a period of approximately 50 years. Plaintiff constructed a residence on his land and installed a swimming pool and made expenditures for planting, seeding and landscaping. He also testified that he made intermittent use of the pond until approximately 1958 when defendant’s property was acquired for school purposes and upon which a school building and other facilities were subsequently installed. The school premises of the defendant lie a distance north of the pond and are substantially higher in el ovation than plaintiff’s land and the testimony shows that the elevation, if anything, has been reduced rather than increased by the installation of the school facilities and the adoption of the drainage plan.
In improving the school site and the surrounding areas it is alleged that defendants caused the surface waters which would normally flow from the area to bo diverted from their natural course by the use of pipes, catch basins and other artificial channels thereby causing an excessive amount of water to flow into said pond, resulting in an overflow onto plaintiff’s land and causing damage to his property. In substance, defendant is an upland owner, and its property is separated from the area of the pond by intervening land owned by others. It is claimed, *341 among other things, that the channeling of surface waters by artificial means off of defendant’s lands concentrates the flow of water, and thus raises the pond level to a point where the natural overflow gate and drainage channel in front of the dam or wall cannot absorb the waters thus caused to overflow. There is no contention here that waters other than those naturally flowing to the pond area prior to the construction of the school are now caused to enter the pond. Plaintiff’s theory seems to be that the concentrated collection of waters through the installation of catch basins and pipes causes water eventually to enter into the pond with greater force at a given time than otherwise would be the case; that defendant’s acts in channeling the waters prevent a more natural or slower flow into the pond by reducing the degree of natural absorption.
It is defendant’s position that in laying out the school site engineers and qualified experts were requested to submit a drainage and site plan; the severity of the slope existing prior to plaintiff’s construction was reduced and that the net result of the plan finally adopted was to improve the drainage situation with respect to its land, the land of other owners and the pond, and not to interfere with or to damage surrounding properties.
Our highest courts have determined the law in this State with respect to the rights of lower and upper owners to improve their lands, and recent cases have contained a full discussion of the rights of property owners in connection with this vexatious problem, to wit, the disposition and flow of surface waters. It is now established that our courts have adopted the so-called “ common law ” rule in order to avoid discrimination against a lower proprietor. Under the “ civil law ” as distinguished from the ‘ ‘ common law ’ ’ the upper owner was held to be the dominant estate and the lower property owner held to be the servient estate. Under the common law neither holds a dominant or servient estate or position with respect to the other. Both have equal rights to improve their property come what may to the surface water, provided the improvements are made in good faith to fit the property for some rational use to which it is adapted and that the water is not drained into the other’s property by artificial means, such as pipes and ditches. It seems apparent that no question of good faith on the part of the defendant is here present. The question for determination is whether or not the defendant in improving its land, and admittedly with the use of artificial means such as catch basins and pipes, thereby caused the discharge of waters into the pond and then onto plaintiff’s land which otherwise would not have occurred had the land been left in its original state. There is *342 testimony in the record that at all times prior to the school improvement a water .channel or pipe of substantial size crossed under the roadway immediately to the south of defendant’s property and carried the drainage waters into a swale or swampy area and eventually into the pond. All parties admit that the pond is the natural drainage area for the premises in question. Some testimony was adduced indicating that there was another area of drainage by natural means prior to the improvements made by the municipality and by the School District, but the testimony indicates that as to this portion of the improvement the drainage waters so-called were and are diverted from eventual entry into the pond rather than channeled into it. The testimony as to the evidence of additional waters being cast into the pond or natural dranage area resulting from the improvement of the school property is fragmentary and far from conclusive. True it is that testimony was elicited that the rubble wall forming the dam or dike emitted waters when the pond was high, usually following a torrential down pour or heavy run-off from melting snow or ice. This condition, however, existed prior to the improvement of defendant’s property and there is no tangible evidence in the record indicating that it exists in a greater degree following the improvement than it did prior thereto. A long-time resident of the area testified that he had observed leaking in the dam itself, with water spouting intermittently therefrom for a period exceeding 25 years. The burden cast upon the plaintiff to show that in fact the acts of the defendant caused the level of the water in the pond to be unnaturally raised has not been met. It was likewise testified upon the trial that the raising and lowering device situate approximately midway in the wall or dike had in the past overflowed and that the drainage ditch or channel parallel to and immediately south of the Avail or dike had been, on occasions prior to defendant’s construction, inadequate to accept and handle the surface waters draining from the area north of the pond. This court is aware of the limitation of the rights of a property OAvner in disposing of surface waters where the water is collected and drained onto other property by means of pipes or ditches, and is likewise aAvare that the waters here are in fact handled in and out by pipes and artificial means, to cause them to flow into the pond and the natural drainage area, but no proof has been offered to indicate that the acts of the defendant have caused a condition to arise differing from that which existed prior to defendant’s improvement of its property. Likewise, it has not been established that any deleterious effect or damage was caused to the dike or dam by reason of the installa *343 tion of the drainage system as it now exists and the collection of waters artificially with possible additional force.
An inspection of the premises by the court, with the consent of all parties, bears out the court’s view of the testimony given at the trial and of the conclusions reached herein. It is unfortunate that all parties in interest are unable to properly repair the rubble wall or dike in question which would seem to be a solution to the problem, coupled with a repair of the drain-off channel immediately to the south of the rubble wall. This court, however, on the evidence presented may not assist the parties in that regard for the reason that plaintiff has shown no actionable wrong on the part of the defendant herein.
Plaintiff’s claim for injunctive relief is denied as is plaintiff’s alternate claim for damages.